# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JULY 28, 2010 Session

## LANIS KARNES v. MADISON COUNTY, ET AL.

### Direct Appeal from the Circuit Court for Madison County
#### No. C-09-17    R. Lee Moore, Jr., Judge

### No. W2009-02476-COA-R3-CV - Filed September 23, 2010

This appeal concerns the liability of a county. The county filed a motion to dismiss the plaintiff's complaint for failure to state a claim, arguing that the public duty doctrine barred the plaintiff's claim. The trial court granted the motion to dismiss upon concluding that the public duty doctrine applied and that its special duty exception was inapplicable. After examining the complaint in accordance with the liberal standards required at this stage of the proceedings, we find that Plaintiff's allegations sufficiently state a cause of action to withstand the motion to dismiss.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Leanne A. Thorne, Lexington, Tennessee; Stuart B. Breakstone, Kathy B. Tennison, Memphis, TN, for the appellant, Lanis Karnes

Brandon O. Gibson, Melissa K. Van Pelt, Jackson, Tennessee, for the appellees, Madison County, et al

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Lanis Karnes ("Plaintiff") is an attorney who was court appointed to represent an inmate in a case involving the potential termination of the inmate's parental rights in Madison County Juvenile Court. The inmate, who was in the custody of the Tennessee Department of Correction, was transported from the correctional facility where she was housed to the Madison County jail on or about January 17, 2008, in preparation for the trial.[1] On January 19, the inmate awoke with symptoms of a serious eye infection, including swelling and secretion of pus. On January 22, the inmate was transported to the juvenile court for the trial by two deputies of the Madison County Sheriff's Department. Upon her arrival, Plaintiff noticed that the inmate's eyes were swollen almost shut and were actively secreting pus. Plaintiff asked the inmate what was wrong with her eyes, and the inmate replied that she did not have a diagnosis. She stated that she began experiencing the condition three days earlier and that she had requested treatment but was ignored.

When the matter came before the court, the trial judge questioned the inmate in a similar manner. However, the judge decided to proceed with the trial based upon her conclusion that the Sheriff's Department's transport of the inmate indicated that she was not a risk to the individuals with whom she would be in contact. The trial proceeded for approximately eight hours, during which time Plaintiff was seated next to the inmate at counsel's table and was passing exhibit documents back and forth. Immediately after the trial, the Sheriff's Department transported the inmate to an emergency room, where she was diagnosed with a staph infection in her eyes.

Two days later, Plaintiff awoke to discover her eyes completely swollen shut. She was subsequently diagnosed with orbital cellulitis secondary to a staph infection and quarantined to her home for five weeks.

On January 21, 2009, Plaintiff filed this lawsuit against Madison County, asserting that its agents and employees at the jail "owed the Plaintiff a duty to act reasonably to protect her from an unreasonable risk of harm, specifically, protracted personal exposure to an inmate with staph infection." Plaintiff alleged that Madison County's agents and employees

---

[1] Because this case was dismissed for failure to state a claim upon which relief can be granted, we are required to take the facts as stated in the complaint as true. *Ezell v. Cockrell*, 902 S.W.2d 394, 396 (Tenn. 1995).

breached that duty of care, and that their actions constituted negligence.[2]

Madison County filed a motion to dismiss for failure to state a claim, asserting that Plaintiff's claim was barred by the public duty doctrine. Plaintiff filed a memorandum in opposition to the motion. The trial court entered an order granting the motion to dismiss on November 4, 2009, and Plaintiff timely appealed.

## II. STANDARD OF REVIEW

"A Rule 12.02(6) motion to dismiss seeks only to determine whether the pleadings state a claim upon which relief can be granted." ***Edwards v. Allen***, 216 S.W.3d 278, 284 (Tenn. 2007). The motion challenges the legal sufficiency of the complaint, admitting the truth of all relevant and material averments contained therein, but asserting that such facts do not constitute a cause of action. ***Id.*** "It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief." ***Trau-Med of America, Inc. v. Allstate Ins. Co.***, 71 S.W.3d 691, 696 (Tenn. 2002). "[A] 'complaint is subject to dismissal under rule 12.02(6) for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint.'" ***Givens v. Mullikin ex rel. Estate of McElwaney***, 75 S.W.3d 383, 404 (Tenn. 2002) (quoting *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1977)). We are required to take the relevant and material factual allegations in the complaint as true and to liberally construe all allegations in favor of the plaintiffs. ***Edwards***, 216 S.W.3d at 284. However, we review the trial court's conclusions of law *de novo* with no presumption of correctness. ***Id.***

## III. DISCUSSION

The doctrine of public duty is a common law affirmative defense that precludes liability for the actions of governmental employees in applicable situations. ***Wells v. Hamblen County***, No. E2004-01968-COA-R3-CV, 2005 WL 2007197, at *3 (Tenn. Ct. App. Aug. 22, 2005). As in any other negligence action, a plaintiff alleging negligence of a government employee must establish the existence of a duty or standard of care. ***Hurd v. Flores***, 221 S.W.3d 14, 27 (Tenn. Ct. App. 2006) (citing *Wells*, 2005 WL 2007197, at *3). However, the public duty doctrine provides immunity to public employees from suits for

---

[2] Plaintiff also asserted a violation of Tennessee Code Annotated 8-8-302, and she named as additional defendants the county mayor, the county jail, and the sheriff. However, all of these claims were later dismissed by agreement.

injuries that are caused by their breach of a duty owed to the public at large.[3] ***Matthews v. Pickett County***, 996 S.W.2d 162, 164 (Tenn. 1999); ***Ezell v. Cockrell***, 902 S.W.2d 394, 397 (Tenn. 1995). The public duty doctrine "serves the important purpose of preventing excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion." ***Ezell***, 902 S.W.2d at 400-401. It eliminates the situation where police officials are placed in the untenable position of insuring the personal safety of every member of the public, or facing a civil suit for damages. ***Id.*** at 398. It is also frequently said that "individuals, juries and courts are ill-equipped to judge governmental decisions as to how particular community resources should be or should have been allocated to protect individual members of the public." ***Id.*** at 397-98 (citing *Morgan v. District of Columbia*, 468 A.2d 1306, 1311 (D.C. App. 1983)).

"Succinctly stated, the [public duty] doctrine provides that private citizens cannot maintain an action against public officials or entities unless they are able to allege a special duty not owed to the public generally." ***Hurd v. Flores***, 221 S.W.3d at 28. "In Tennessee, it has long been held that a plaintiff must show the existence of a duty particular to him or her, as distinct from a duty owed to the public in general." ***Wells***, 2005 WL 2007197, at *3. In other words, under the public duty doctrine, "a duty owed to everyone is a duty owed to no one." ***Brown v. Hamilton County***, 126 S.W.3d 43, 48 (Tenn. Ct. App. 2003). However, an exception to the public duty doctrine's rule of no-liability applies "where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." ***Ezell***, 902 S.W.2d at 401. In Tennessee, a "special duty" of care exists when:

> 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking;
> 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or
> 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

---

[3] "While the doctrine is couched in terms that appear to afford protection to individual employees, the doctrine has been applied to shield governmental entities from liability as well." ***Hurd v. Flores***, 221 S.W.3d at 27 (citing *Ezell*, 902 S.W.2d at 404; *Wells*, 2005 WL 2007197, at *3).

*Id.* at 402. The focus of the "special duty" exception is on the relationship between the parties.[4] ***Matthews***, 996 S.W.2d at 165. "If a special relationship does exist, the public duty doctrine defense is negated, and immunity conferred by the doctrine is removed." ***Id.***

On appeal, Plaintiff first argues that the trial court erred "in considering the public duty doctrine in a Rule 12.02(6) motion" because Plaintiff claims that the public duty doctrine is a factual affirmative defense. As stated above, a complaint may be dismissed under rule 12.02(6) for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint. ***Givens***, 75 S.W.3d at 404. "[I]t is not necessary for the defendant to submit evidence in support of his motion when the facts on which he relies to defeat plaintiff's claim are admitted by the plaintiff in his complaint." ***Id.*** (quoting *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1977)). When the affirmative defense involves only an issue of law, resolution under Rule 12.02 is appropriate. ***Id.*** On the other hand, "when the affirmative defense relates primarily to an issue of fact, different concerns may often counsel against deciding the merits of the affirmative defense in a motion to dismiss." ***Id.***

When the Tennessee Supreme Court formally recognized the public duty doctrine in ***Ezell*** and applied it to the facts of that case, the Court affirmed the trial court's dismissal of the plaintiff's complaint for failure to state a claim based upon the clear applicability of the public duty doctrine. 902 S.W.2d at 403. Examining the complaint, the Court concluded that the public duty doctrine applied and that "[t]he plaintiff's allegations [did] not support application of a 'special-duty' of care." ***Id.***; *see also **Wells***, 2005 WL 2007197, at *1 (affirming dismissal because the "allegations, taken as true, [did] not establish the special duty exception described in *Ezell*"); ***Hurd v. Woolfork,*** 959 S.W.2d 578, 584 (Tenn. Ct. App. 1997) (affirming dismissal for failure to state a claim because the public duty doctrine applied and the complaint "fail[ed] to contain allegations which would bring the Plaintiffs'

---

[4] It is more apparent that the first two circumstances focus on the relationship between the parties than the third. However, reckless conduct by a public employee may also establish a special relationship with a private citizen and allow the citizen to recover for a breach of duty. 63C Am. Jur. 2d *Public Officers and Employees* § 330 (2010).

> This may occur when a public employee is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. . . . The court will permit official liability if the public official's duty to act is so clear and unequivocal that the policy rationale underlying immunity, namely, to encourage municipal officers to exercise judgment, has no force.

*Id.*

actions within the doctrine's special duty exception"). Thus, it was not improper for the trial court to consider the issue of the public duty doctrine in the context of a Rule 12.02(6) motion to dismiss.

Next, Plaintiff argues that the public duty doctrine does not apply to this case because the inmate was not a danger to the public at large, but only to those persons at the Juvenile Court that day. In other words, Plaintiff argues that the Sheriff's Department owed a duty to her "because the Defendant had reason to know that the Plaintiff was in danger under the circumstances[.]"

Essentially, Plaintiff is arguing that a "special relationship" or "special duty" existed in this case. Again, an exception to the public duty doctrine's rule of no-liability applies "where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Ezell*, 902 S.W.2d at 401. However, in *Ezell*, the Supreme Court found it "both desirable and necessary" to "further refine" the special duty exception. *Id.* at 402. "[A]fter reviewing the requirements imposed in a number of other states as well as the exception's history in Tennessee courts," *Wells*, 2005 WL 2007197, at *4, the Supreme Court determined that a special duty of care will be found to exist under Tennessee law in three circumstances:

> when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Id.* at 402. Thus, "[t]here are three situations in which the public duty doctrine is inapplicable because it is nullified by the special duty exception." *Brown*, 126 S.W.3d at 49. Notably, the Court did not hold that a special duty of care will be found simply based on a foreseeability analysis, or when an officer is dealing with only a small group of people, as Plaintiff's argument suggests. Instead, the Court concluded that application of the special duty exception "should be limited to" the three circumstances set out above. *Hurd v. Woolfork*, 959 S.W.2d at 582.

When discussing the various tests utilized in other jurisdictions in *Ezell*, the Supreme Court noted that in Connecticut, the special duty exception applies in "circumstances where it is apparent to the public officer that his failure to act will likely subject an identifiable person to imminent harm." *Ezell*, 902 S.W.2d at 402. However, the language chosen by our

Supreme Court differs from "the tests applied in other states that were specifically considered, and impliedly rejected, by the Court in *Ezell*." *Wells*, 2005 WL 2007197, at *5.

Cases applying the public duty doctrine also make clear that whether a special duty arose under Tennessee law does not simply turn on whether the defendant might have "had reason to know that [someone] was in danger under the circumstances," as Plaintiff suggests. The essential inquiry is whether one of the three situations listed in *Ezell* applies. For example, in *Wells*, a woman contacted the sheriff's department after a domestic dispute with her child's father, and she asked the sheriff's deputy who responded to go to the father's residence and get her child because she feared for the child's safety. 2005 WL 2007197, at *1. The sheriff's deputy planned to obtain a warrant and retrieve the child the following day, but before he did, the father murdered the child. *Id.* at *2. The mother sued the county based on the deputy's handling of the matter. *Id.* at *1. The Court of Appeals explained that a special duty arises under any one of the three situations listed in *Ezell*, and it concluded that the plaintiff had not alleged facts that would support the application of the special duty exception. *Id.* at *7-8. Therefore, the public duty doctrine precluded liability. *Id.* at *8.

In *Hurd v. Woolfork*, a man had been charged with aggravated rape, and an arrest warrant was subsequently issued due to his violation of the terms of his probation. 959 S.W.2d at 580. The man's neighbors informed the sheriff's department "of his continuing course of conduct that threatened the members of the neighborhood in which [he] resided." *Id.* Nevertheless, the sheriff's department still had not executed the warrant after ten days, and the suspect brutally murdered two of his neighbors. *Id.* This Court concluded that the public duty doctrine precluded liability because none of the three circumstances listed in *Ezell* were present. *Id.* at 583. Despite the neighbors' complaints, the sheriff's duty to keep the peace and to execute arrest warrants was "a public duty, 'not owed to any individual in particular.'" *Id.* at 581 (quoting *Ezell*, 902 S.W.2d at 397).

Finally, in *Hurd v. Flores*, plaintiffs argued that a deputy had a duty to prevent their daughter from using an emergency interstate crossover drive in violation of state law. 221 S.W.3d at 28. The deputy was following their daughter but did not attempt to prevent her from using the crossover, and she was killed when she pulled her vehicle into oncoming traffic. *Id.* at 19. Nevertheless, the public duty doctrine applied because the deputy's refusal to enforce the applicable law was a duty owed to the public in general, not to the plaintiff's daughter, and the circumstances giving rise to the special duty exception did not apply. *Id.* at 28-29.

As demonstrated by these cases, we must consider the three circumstances set forth in *Ezell* in order to determine whether a special duty of care arose in this case. Plaintiff does not argue that either of the first two circumstances apply, so we will not consider their

applicability. Plaintiff only relies upon the third circumstance, which provides that a special duty of care arises when "the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct." *Ezell*, 902 S.W.2d at 402. Madison County argues that the third circumstance is inapplicable because Plaintiff's complaint specifically labeled her cause of action as one for "negligence," and it did not allege any "reckless" or "intentional" conduct. Plaintiff, however, argues that she was not required to anticipate the affirmative defenses that might be raised by Madison County, and she claims that the facts stated in her complaint, when construed in her favor, sufficiently demonstrate reckless misconduct.

In *Gardner v. Insura Property & Cas. Ins. Co.*, 956 S.W.2d 1, 3 (Tenn. Ct. App. 1997), a plaintiff alleged in her complaint that a police officer was "negligent and reckless" in his conduct. Therefore, she claimed that the third special duty circumstance applied. However, the Court of Appeals explained that "the allegation that the officer was 'reckless' is a legal conclusion, which, standing alone, does not state a cause of action." *Id.* (citing *Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997)). The Court looked to the specific facts that were present and concluded that summary judgment was appropriate because, "when viewed most favorably to the plaintiff, the undisputed material evidence [did] not establish that the officer's conduct was a gross or a reckless deviation from the reasonable standard of care." *Id.*

Likewise, in *Hurd v. Woolfork*, the plaintiff's complaint alleged "extremely reckless conduct" by the sheriff. 959 S.W.2d at 584. Nonetheless, the allegation of "reckless" conduct was deemed a legal conclusion, and when ruling on a motion to dismiss, "the trial court, and this court on appeal, are not required to accept such legal conclusions as true." *Id.* The Court concluded that the factual basis for the plaintiff's allegation established, at most, simple negligence. *Id.* Therefore, the special duty exception for reckless misconduct was inapplicable. *Cf. Brown*, 126 S.W.3d at 50 (examining the evidence and concluding that it supported a finding of recklessness sufficient to come within the exception to the public duty rule).

Although Plaintiff's complaint did not use the term "reckless," we will look to the facts alleged to determine whether she states a claim upon which relief could be granted. "Reckless conduct is defined as taking place when a person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Gardner*, 956 S.W.2d at 3 (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)). Because this case was decided on a motion to dismiss, Plaintiff's factual allegations must be taken as true and liberally construed in her favor. *Edwards*, 216 S.W.3d at 284. Plaintiff's complaint alleged that on January 19, the inmate awoke "with symptoms of a serious eye infection," including swelling and the secretion of

pus. On January 22, the inmate was transported to the juvenile court by two deputies of the Madison County Sheriff's Department. Upon her arrival, Plaintiff noticed that the inmate's eyes were "swollen almost shut, and were actively secreting pus." Plaintiff asked the inmate what was wrong with her eyes, and the inmate replied that she did not have a diagnosis. She said that she began experiencing the condition three days earlier and had requested treatment, but she was ignored. When the matter came before the court, the trial judge also questioned the inmate in a similar manner. However, the judge decided to proceed with the trial upon deciding that the Sheriff's Department's transport of the inmate evidenced that she was not a risk to the individuals with whom she would be in contact. Immediately after the eight-hour trial, the Sheriff's Department transported the inmate to an emergency room, where she was diagnosed with a staph infection in her eyes.

When examining a complaint to determine whether it will survive a motion to dismiss for failure to state a cause of action, "a court should read the complaint with a generous eye." ***Leach v. Taylor***, 124 S.W.3d 87, 92 (Tenn. 2004). "'As Rule of Civil Procedure 8.01 only requires that a complaint set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief,' courts should liberally construe the complaint in favor of the plaintiff when considering a motion to dismiss for failure to state a claim.'" ***Id.*** (quoting *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000)) (emphasis omitted). A court should not dismiss a complaint for failure to state a claim "unless it appears that the plaintiff can establish no facts supporting the claim that would warrant relief." ***Doe v. Sundquist***, 2 S.W.3d 919, 922 (Tenn. 1999). Construing Plaintiff's allegations liberally, we find them sufficient to permit a finding that the sheriff's deputies consciously disregarded a substantial and unjustifiable risk of such a nature that its disregard constituted a gross deviation from the standard of ordinary care. Therefore, to the extent that the Defendant's conduct could be deemed reckless, Madison County is not immune from liability under the public duty doctrine and Plaintiff stated a claim upon which relief could be granted.

On appeal, Madison County urges us to hold that dismissal was proper on the alternative ground that "the County's method of providing medical care to inmates is a discretionary function" under the Tennessee Governmental Tort Liability Act, for which the County is immune from suit. It is true that if a governmental entity is immune under the GTLA, then the public duty doctrine and its exceptions are not relevant because they "[have] no effect on and cannot remove immunity afforded by the GTLA." ***Wells***, 2005 WL 2007197, at *3 (citing *Chase v. City of Memphis,* 971 S.W.2d 380, 385 (Tenn. 1998)). "Consequently, where both the statutory and common law defenses are raised, it is generally true that the first question to be addressed in a negligence action against a local government is whether that government is immune from liability under the GTLA." ***Id.*** (citing *Matthews,* 996 S.W.2d at 165; *Brown,* 126 S.W.3d at 48). However, where only the common law public duty doctrine defense is raised, "it is appropriate to consider only the issues presented by that

defense." ***Id.*** (citing *Chase,* 971 S.W.2d at 385; *Ezell,* 902 S.W.2d at 400 n.11).

When Madison County filed its motion to dismiss in the trial court, it mentioned the term "discretionary function" in one sentence, noting generally that the GTLA does not remove immunity if an act or omission arose out of the exercise of a discretionary function. However, the motion went on to argue that the public duty doctrine barred Plaintiff's claim, and it never argued that the actions taken in this case constituted discretionary acts. Plaintiff's response did not mention the issue of discretionary function immunity, and neither did the trial court's order. Thus, we will not consider the issue for the first time on appeal.

## IV. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and remand for further proceedings. Costs of this appeal are taxed to the appellee, Madison County, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.